**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | § | |
|---|---|---|
| **In re:** | § | Chapter 11 |
| | § | |
| **VPR OPERATING, LLC,** *et al.*; | § | Case No. 13-10599 |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (B) REQUIRING RETURN OF CASH COLLATERAL; (C) AUTHORIZING THE DEBTORS TO INCUR POSTPETITION SECURED, SUPERPRIORITY INDEBTEDNESS; AND (D) SCHEDULING A FINAL HEARING THEREON**

VPR Operating, LLC ("VPR"), VPR (OK), LLC ("VPROK"), VPR (NM), LLC ("VPRNM"), and VPR Corp. ("VPRC"), the above-referenced debtors and debtors in possession (collectively, the "Debtors") file this *Emergency Motion for Order (A) Authorizing the Debtors to Use Cash Collateral; (B) Requiring Return of Cash Collateral; (C) Authorizing the Debtors to Incur Postpetition Secured Superpriority Indebtedness; and (D) Scheduling a Final Hearing Thereon* (the "Motion"), and would respectfully show the Court as follows:

**I. Relief Requested**

1. Through the Motion, the Debtors are requesting entry of an interim order (the "Interim Order") and a final order (the "Final Order"): (a) authorizing the Debtors to use cash collateral and provide adequate protection for such cash collateral usage; (b) requiring all nondebtor parties possessing cash collateral to return such funds to the Debtors; and (c) to incur, to the extent necessary to cover any cash collateral shorfalls, postpetition indebtedness under a senior, secured, superpriority credit facility.

**Emergency Motion for Order Approving Cash Collateral Usage and DIP Financing**

Page 1

4830-7708-6227.

**A. Usage of Cash Collateral and Grant of Adequate Protection**

2. By this Motion, the Debtors respectfully request that the Court approve, on an interim and final basis, the Debtors' use of the Pre-Petition Debt holders' (as defined below) cash collateral (as that term is defined in 11 U.S.C. § 363(a), the "Cash Collateral") under the terms and conditions further set forth herein and pursuant to the approved Budget (as defined below). The Debtors submit that the Pre-Petition Debt holders are the only prepetition creditors with an interest in Cash Collateral. As required by Bankruptcy Rule 4001(b), the names of all entities maintaining an interest in Cash Collateral are set forth in paragraph F of the Interim Order.

3. The Debtors' requested usage of Cash Collateral will be limited to: (i) expenditures for general working capital purposes in the ordinary course of business; and (ii) expenditures associated with the Debtors' bankruptcy cases. All such Cash Collateral usage will be subject to, and in accordance with, the terms of the weekly cash flow budget prepared by the Debtors, in a form and substance acceptable to the DIP Lenders (as defined below) and DIP Agent (as defined below) (such approved cash flow budget, the "Budget"). As required by Bankruptcy Rule 4001(b), the Debtors' proposed Cash Collateral usage is described in paragraph 14 of the Interim Order.

4. Additionally, the Debtors request that the Pre-Petition Debt holders, who maintain the only interest in the Cash Collateral, receive adequate protection, to the extent of diminution in value, in the form of replacement liens and superpriority claims (which liens and superpriority claims will be subject to the Carve-Out (as defined below) and any liens granted to the DIP Lenders under the DIP Loan (as defined below) and all existing liens and encumbrances that were senior to the Prepetition Agent's Liens on the Petition Date that are valid, binding,

**Emergency Motion for Order Approving Cash Collateral Usage and DIP Financing**

enforceable, perfected and non-avoidable). As required by Bankruptcy Rule 4001(b), the proposed adequate protection to be furnished to the Pre-Petition Debt holders is set forth in paragraph 10 of the Interim Order.

### B. Return of Cash Collateral

5. Presently, one or more of the Debtors' hydrocarbon purchasers are holding cash proceeds from the Debtors' hydrocarbon sales in "suspense," in response to prepetition collection demands lodged by certain of the Debtors' trade creditors. Such cash proceeds of hydrocarbon sales are property of the Debtors' bankruptcy estates. Bankruptcy Code Section 542 provides that nondebtors in possession of such cash proceeds are required to deliver those cash proceeds to the Debtors. Consequently, the Debtors respectfully request that the Court enter an order requiring all nondebtor entities possessing the Debtors' cash collateral, including, without limitation, hydrocarbon purchasers holding sales proceeds in "suspense," to return such cash collateral to the Debtors.

### C. Authorization to Engage in DIP Loan Borrowings to the Extent Necessary

6. The Debtors request that, to the extent that usage of Cash Collateral will not be sufficient to sustain their business operations, the Court authorize the Debtors, on an interim and final basis, pursuant to Bankruptcy Code Sections 364(c) and 364(d), to engage in one or more borrowings under a proposed superpriority debtor-in-possession financing facility described herein (the "DIP Loan"). The DIP Loan will be secured by first-priority liens on all of the Debtors' assets, as well as superpriority claims with a priority over all administrative claims granted pursuant to Bankruptcy Code Sections 503(b) and 507(b).

7. The Debtors believe that upon entry of the Interim Order approving the Debtors' proposed DIP Loan borrowings, the Debtors will require an initial DIP Loan draw of

**Emergency Motion for Order Approving Cash Collateral Usage and DIP Financing**

Page 3

approximately $525,000. Following that initial draw, and upon entry of the Final Order, the Debtors request that they be authorized, to the extent that their liquidity needs exceed available Cash Collateral, to obtain additional DIP Loan borrowings in an amount not to exceed the maximum $2.5 million DIP Loan Commitment.

8. In accordance with Bankruptcy Rule 4001(c), a summary of the material terms of the DIP Loan is set forth below, in the Attorney Checklist Concerning Motions and Orders Pertaining to Use of Cash Collateral and Post-Petition Financing (the "Cash Collateral Checklist"), which is being filed concurrently herewith, and in the term sheet attached hereto as Exhibit A. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the attached term sheet.

## II. Jurisdiction and Venue

9. This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. Background

### A. General Background Regarding the Debtors

10. On March 29, 2013 (the "Petition Date"), the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in the Debtors' bankruptcy cases.

11. A motion requesting joint administration of the Debtors' estates is pending before this Court.

12. The Debtors are privately-owned Austin, Texas-based oil and gas companies focused on acquiring and developing assets in the domestic onshore basins of the United States. While the Debtors maintain highly productive properties, a series of unfortunate and unforeseen events, including regulatory complications and missteps by the Debtors' drilling contractors, have prevented the Debtors' business operations from reaching their full potential. Although the Debtors were actively working with a financial advisor to assist them in finding financial or strategic partners or buyers that would alleviate their financial strain, certain of the Debtors' creditors began to exercise remedies that held the Debtors' production proceeds in suspense, crippling their business operations and forcing the Debtors to seek bankruptcy protection.

13. Additional background regarding the Debtors, their business operations, and the events leading up to their bankruptcy filings is set forth in the *Declaration of Robert Pullen in Support of First Day Motions* (the "Pullen Declaration"), which is filed concurrently herewith and incorporated herein by reference.

**B. The Debtors' Prepetition Indebtedness**

14. On the Petition Date, the Debtors had at least $83.3 million of outstanding senior secured note obligations. These senior secured note obligations are governed by: (i) that certain Second Amended and Restated Financing Agreement, dated as of May 19, 2011, by and among the Debtors and the note purchasers identified therein (as amended, restated, supplemented or modified from time to time, the "Financing Agreement"); (ii) the Second Amended and Restated Pledge and Security Agreement, dated as of May 19, 2011 (as amended, restated, supplemented or modified from time to time, the "Security Agreement"); (iii) the senior secured revolving

**Emergency Motion for Order Approving Cash Collateral Usage and DIP Financing**

notes (the "Revolving Notes") and the senior secured term notes (the "Term Notes") issued in connection with the Financing Agreement; (iv) the Subordination and Intercreditor Agreement dated as of May 19, 2011 (the "Subordination Agreement"); and (v) each of the other Transaction Documents (as defined in the Financing Agreement)(collectively, the "Pre-Petition Debt Documents," and the debt set forth in such documents, the "Pre-Petition Debt").

15. The Financing Agreement governs two classes of notes, the Revolving Notes and the Term Notes. Both the Term Notes and Revolving Notes are secured by liens against substantially all of the Debtors' real and personal property. The Debtors believe that the liens securing the Pre-Petition Debt are senior to all other liens and encumbrances. Additionally, the Debtors believe that all present and future cash proceeds generated from their ongoing business operations constitute Cash Collateral of the Pre-Petition Debt holders.

16. Approximately $33.4 million of Revolving Notes are held by an unaffiliated third party capital provider, while a small portion of the Revolving Notes, approximately $4.6 million, are held by a non-debtor affiliate. All of the Term Notes, which are subordinate to the Revolving Notes as provided in the Subordination Agreement, are held by two non-debtor affiliates.

17. Additionally, on the Petition Date, the Debtors were indebted under that Subordinated Promissory Note, dated October 15, 2012 (the "Bridge Note") in the approximate amount of $528,315. The Bridge Note is held by a non-debtor affiliate, is subordinate to the Pre-Petition Debt, and is not secured by liens against any of the Debtors' assets.

### IV. Basis for Relief

**A. Cash Collateral Usage and Adequate Protection Should be Approved**

18. The Debtors seek to use the Pre-Petition Debt holders' Cash Collateral immediately upon the Court's entry of the Interim Order, in order to both satisfy their working

**Emergency Motion for Order Approving Cash Collateral Usage and DIP Financing**

Page 6

4830-7708-6227.

capital needs and fund the cost of administering their Bankruptcy Cases. All such Cash Collateral usage will be made pursuant to the Budget, subject to permitted variances of 10% per line item and in the aggregate.

19. Pursuant to Section 363(c)(2) of the Bankruptcy Code, the Debtors may not use Cash Collateral unless either: (a) each entity with an interest in the Cash Collateral consents; or (b) the Court, after notice and a hearing, authorizes such use. 11 U.S.C. § 363(c)(2). Here, the Pre-Petition Debt holders, the only parties with an interest in the Cash Collateral, have indicated that they will consent to such proposed Cash Collateral usage, subject to the terms of the adequate protection that the Debtors have proposed in this Motion.

20. As set forth above, to the extent of diminution in value, the Debtors propose to adequately protect the Pre-Petition Debt holders, in the form of: (i) automatically perfected, first priority replacement liens against all of the Debtors assets, real or personal (the "Adequate Protection Liens"), which Adequate Protection Liens will be subject to the Carve-Out, any liens granted to the DIP Lenders under the DIP Loan, and all existing valid, binding, enforceable, perfected, and non-avoidable liens and encumbrances that were senior to the Prepetition Agent's Liens on the Petition Date; (ii) a superpriority administrative expense claim, with priority over all administrative and priority expenses of the kind specified in Sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, subject only to the Carve-Out and any superpriority administrative claims of the DIP Lenders; and (iii) compliance with the Budget.

21. The Bankruptcy Code does not provide an all-encompassing definition of what will constitute "adequate protection." *See In re First South Sav. Ass'n.*, 820 F.2d 700, 710 (5th Cir. 1987). However, Section 361 of the Bankruptcy Code does provide a non-exclusive list of factors that may constitute adequate protection, including granting a creditor replacement liens to

**Emergency Motion for Order Approving Cash Collateral Usage and DIP Financing**

the extent of diminution in the value of their security interest, or granting a creditor administrative expense claims -- the exact forms of adequate protection that the Debtors propose to provide here. 11 U.S.C. § 361.

22. Moreover, the Debtors submit that the replacement liens, superpriority claims and other protections offered to the Pre-Petition Debt holders will sufficiently protect their interest in any Cash Collateral used in the ordinary course of their business affairs. Accordingly, the adequate protection offered herein is fair, reasonable, and sufficient to satisfy the Cash Collateral usage prerequisites set forth in Bankruptcy Code Sections 363(c) and 363(e).

### B. Nondebtors Must Return Cash Collateral

23. Upon the commencement of the Debtors' bankruptcy proceedings, the Bankruptcy Code created an estate comprised of all of the Debtors' property, which property is protected by the automatic stay. 11 U.S.C. §§ 541(a), 362(a). The scope of the Debtors' bankruptcy estates is "very broad" and includes all of their legal and equitable interests in property, wherever located and by whomever held. 11 U.S.C. § 541(a); *Affiliated Computer Sys. v. Sherman (In re Kemp)*, 52 F.3d 546 (5th Cir. 1995)("The scope of property rights and interests included in a bankruptcy estate is very broad … ").

24. This estate property includes all of the Debtors' outstanding rights to earned cash and cash collections, regardless of whether such cash is held by the Debtors or other third parties. *See In re Kemp*, 52 F.3d at 554 (earned cash sales commissions held by debtor's employer were property of debtor's estate), *In re Salmanson*, 132 B.R. 547, 553 (Bankr. W.D. Tex. 1991)(prepetition cash rents retained by debtor's property management company were property of the debtor's estate).

25. Furthermore, upon the commencement of the Debtors' bankruptcy cases, any persons possessing property of the Debtors' estates is required to deliver and account for such property to the Debtors. 11 U.S.C. § 542(a); *In re Kemp*, 52 F.3d at 550. This obligation to deliver estate assets to the Debtors is self-executing and does not require the holding of a hearing or the entry of an order by the bankruptcy court. *Cornerstone Prods. v. Pilot Plastics, Inc. (In re Cornerstone Prods.)*, 2007 Bankr. LEXIS 4101, *35 (Bankr. E.D. Tex. 2007).

26. A nondebtor in possession of estate assets is required to return such assets to the estate, even if the nondebtor has received competing claims to such assets from other interested parties. *See In re Kemp*, 52 F.3d at 553-54 (employer required to deliver sales commissions to debtor, notwithstanding allegations that debtor had orally committed to cede a portion of such commissions to a third party); *In re Salmanson*, 132 B.R. at 551-53 (property manager required to return prepetition rents to debtor, notwithstanding allegations that bank/mortgagee retained superior interest in such funds).

27. Here, a material portion of the Debtors' Cash Collateral is being held in "suspense" by one or more the Debtors' hydrocarbon purchasers, in response to prepetition collection demands lodged by certain of the Debtors' trade creditors. Just as in *Kemp* and *Salmanson*, notwithstanding the competing demands of the Debtors' trade creditors, all of the Debtors' Cash Collateral generated from hydrocarbon sales constitutes property of their estates -- property that is now protected by the automatic stay and subject to the requirements imposed by Bankruptcy Code Section 542(a). Consequently, the Debtors respectfully request that the Court enter an order requiring all persons holding an interest in the Debtors' cash and Cash Collateral, including, without limitation, the Debtors' hydrocarbon purchasers, to return such cash and Cash

Collateral to the Debtors, for use in the operation of their business affairs consistent with the terms set forth herein.

### C. DIP Financing was Negotiated in Good Faith and Should be Approved

28. The Debtors intend, to the extent possible, to sustain their business operations through Cash Collateral usage. However, in the event Cash Collateral usage alone is not sufficient to sustain their business operations, the Debtors are alternatively requesting that the Court authorize them to engage in DIP Loan borrowings, in an amount up to the Commitment.

29. As set forth above, the liens that would secure any DIP Loan borrowings undertaken by the Debtors would be senior to all liens other than (i) existing, perfected liens that were senior to the Pre-Petition Debt as of the Petition Date; and (ii) the Carve-Out. Such liens would prime the existing liens of the Pre-Petition Debt holders. Pending entry of the Final Order, the Debtors are requesting interim approval to draw up to $525,000 of the DIP Loan Commitment and grant the DIP Lenders and Pre-Petition Lenders the liens and adequate protection set forth in the summary above.

#### 1. The Proposed DIP Financing Satisfies Section 364(d)

30. Bankruptcy Code Section 364(d) provides that a court may only authorize "priming" financing under Section 364(d) if: (i) a debtor is otherwise unable to obtain postpetition financing from other sources (including from creditors willing to provide postpetition financing in exchange for administrative claims, superpriority claims, or junior liens on encumbered property); and (ii) the debtor is able to adequately protect the liens upon estate property on which such senior or equal liens will be granted. 11 U.S.C. § 364(d). Here, both of these criteria are satisfied.

31. First, the Debtors, in the exercise of their reasonable business judgment, have concluded that they will be unable to obtain additional post-petition financing from any source other than the DIP Lenders. Bankruptcy Code Section 364 does not require debtors to perform exhaustive inquiries from dozens of prospective lenders before concluding that credit is not available from other sources. *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dept. Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). Rather, the debtor must only make a good faith demonstration that credit is not available without resorting to senior, priming lien financing. *In re Showshoe Co.*, 789 F.2d at 1088.

32. Here, substantially all of the Debtors' assets are encumbered by the Pre-Petition Debt. In light of the present state of the Debtors' business affairs, significant prepetition encumbrances, and uncertainty relating to the events forcing the Debtors to seek bankruptcy protection, the Debtors are confident that they will be unable to locate a lender that will be able to both: (i) provide financing on the terms offered by the DIP Lenders; and (ii) adequately protect the senior liens securing the Pre-Petition Debt of at least $83.1 million. In short, the DIP Lenders are the only source of capital able to provide the Debtors with the "lifeline" required to ensure that they will have sufficient capital available to preserve and maintain the value of their estates.

33. Second, the Pre-Petition Debt holders will be adequately protected in the event that the Debtors engage in any DIP Loan borrowings. As set forth above, there is no single, all-encompassing definition of "adequate protection" -- the steps necessary to adequately protect a secured lender that will be primed through postpetition financing will depend on the vagaries of each case. The requisite showing of adequate protection for a "priming" lien under Bankruptcy Code Section 364(d) is established where the lienholders to be primed consent to such priming.

**Emergency Motion for Order Approving Cash Collateral Usage and DIP Financing**

Page 11

*See RCD Invs. No. 4, Ltd. v. Foothill Capital Corp. (In re GDH Int'l, Inc.)*, 2001 Bankr. LEXIS 2230 (Bankr. N.D. Tex. 2001)(where prepetition creditor expressly consented to grant of priming lien, no showing of adequate protection required for 364(d) priming financing); Collier on Bankruptcy P. 364.05 (16th Ed. 2010)(priming financing that would impart risk of loss upon existing prepetition lien holder should be denied absent the lien holder's consent).

34. Here, the holders of the Pre-Petition Debt have indicated that they will consent to the postpetition priming financing proposed by the DIP Lenders. Moreover, in the unlikely event that there are any prepetition creditors holding validly perfected, prepetition liens that would rank senior to the liens securing the Pre-Petition Debt, the proposed DIP Loan does not contemplate priming such liens, and would remain subject to such senior prepetition liens. In light of the consent of the Pre-Petition Debt holders, the only entities with an interest in the Debtors' assets and Cash Collateral that would be primed by the DIP Loan, no further showing of adequate protection is necessary to authorize the proposed priming financing.

### 2. The DIP Loan was Negotiated in Good Faith

35. Bankruptcy Code Section 364(e) prevents the reversal or modification, on appeal, of any authorization to obtain credit or indebtedness under Section 364, so long as such credit and indebtedness was negotiated and obtained in good faith.

36. The Debtors and DIP Lenders have negotiated the terms of the proposed DIP Loan at arm's length, and in good faith. Both the Debtors and DIP Lenders were represented by separate counsel during the course of the DIP Loan negotiations. Those negotiations yielded a DIP Loan proposal on favorable terms, where in all likelihood, no alternative postpetition financing proposal, much less a financing proposal on terms as favorable as the ones proposed

here, would be available. Consequently, the Debtors submit that any financing pursuant to the DIP Loan was negotiated in good faith and is entitled to the protections of Section 364(e).

### D. Immediate, Interim Relief is Warranted

37. The Debtors are depending on continued usage of Cash Collateral in order to maintain their ongoing business operations and production activities, and to preserve the going concern value of their estates for the benefit of their creditors and stakeholders. Moreover, because the Debtors forsee the possibility that additional working capital, in excess of available Cash Collateral, may be required to keep their operations functioning, the backstop provided by the proposed DIP Loan will play just as crucial a role in preserving the value of the Debtors' estates.

38. In the event the Debtors are denied access to Cash Collateral and DIP Loan financing, the Debtors would have insufficient liquidity to continue their operations, forcing them to suspend business operations. Such a suspension of operations would cause the Debtors to suffer irreparable harm, which will reduce the value of the recovery realized by the Debtors' creditors and stakeholders. Because the Debtors require immediate Cash Collateral and DIP Loan usage to prevent immediate and irreparable harm to their estates, this request complies with the requirements outlined in Rules 4001 and 6003 of the Federal Rules of Bankruptcy Procedure.

### V. Notice

39. The Debtors have served a copy of this Motion upon (i) the proposed Master Service List, which includes all of the Debtors' secured creditors and the consolidated list of the Debtors' twenty (20) largest unsecured creditors; (ii) the United States Trustee; (iii) those persons who have formally appeared in the Debtors' cases and requested service pursuant to Bankruptcy Rule 2002; and (iv) all applicable governmental agencies, to the extent required by

**Emergency Motion for Order Approving Cash Collateral Usage and DIP Financing**

the Bankruptcy Rules and the Local Rules. The Debtors submit that no other or further notice need be provided.

**WHEREFORE,** the Debtors respectfully request that this Court: (a) schedule an expedited hearing to consider the Debtors' proposed Cash Collateral usage and DIP Loan financing; (b) allow the Debtors to use Cash Collateral on an interim basis; (c) require all nondebtors possessing the Debtors' cash or Cash Collateral to return such funds to the Debtors; (d) authorize the Debtors to borrow up to $525,000 on an interim basis through the DIP Loan; and (e) schedule a final hearing to approve the Debtors' proposed Cash Collateral usage and DIP Loan financing. The Debtors request that the Court grant them such other and further relief to which they may be justly entitled.

Dated: March 29, 2013                    Respectfully submitted,

                                         */s/ Robert W. Jones*
                                         Robert W. Jones
                                         rwjones@pattonboggs.com
                                         Brent R. McIlwain
                                         bmcilwain@pattonboggs.com
                                         Brian Smith
                                         bsmith@pattonboggs.com
                                         PATTON BOGGS LLP
                                         2000 McKinney Avenue, Suite 1700
                                         Dallas, TX 75201
                                         Telephone:    (214) 758-1500
                                         Facsimile:    (214) 758-1550

                                         Proposed Counsel for the
                                         Debtors and Debtors in Possession

**CERTIFICATE OF SERVICE**

I certify that on April 1, 2013, a copy of the foregoing document was served by (i) the Electronic Case Filing System' for the United States Bankruptcy Court for the Western District of Texas, and (ii) via facsimile, e-mail, or overnight delivery to those parties listed, and as indicated, on the attached proposed Master Service List.

                                                 */s/ Brian Smith*
                                                 Brian Smith

**Emergency Motion for Order Approving Cash Collateral Usage and DIP Financing**

**Page 15**

**In re: VPR Operating, LLC, et al.: Master Service List as of April 1, 2013**

| Debtors and their Counsel | | |
|---|---|---|
| In re VPR Operating, LLC, et al.<br>c/o Robert Pullen, President<br>1406 Camp Craft Road, Suite 106<br>Austin, TX 78746 | Patton Boggs LLP<br>c/o Robert W. Jones &<br>Brent McIlwain<br>2000 McKinney Ave, Suite 1700<br>Dallas, TX 75201<br>Fax: (214) 758-1550<br>Email:bmcilwain@pattonboggs.com<br>(via email) | |
| **Prepetition Secured Lenders and Counsel** | | |
| Delfinco, LP<br>510 Feheley Drive<br>King of Prussia, PA 19406 | Cozen O'Connor<br>c/o John T. Carroll, III<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Fax: (302) 295-2013<br>Email: jcarroll@cozen.com<br>(via email) | |
| Victory Park Credit Opportunities, LP<br>Attn: Scott R. Zemnick<br>227 W. Monroe Street, Suite 3900<br>Chicago, IL 60606 | Hohmann,Taube & Summers, L.L.P.<br>c/o Eric J. Taube<br>100 Congress Ave, 18th Floor<br>Austin, TX 78791<br>Fax: (512) 472-5248<br>Email: erict@hts-law.com<br>(via email) | |
| **DIP Lenders and Counsel** | | |
| Delfinco, LP<br>510 Feheley Drive<br>King of Prussia, PA 19406 | Cozen O'Connor<br>c/o John T. Carroll, III<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Fax: (302) 295-2013<br>Email: jcarroll@cozen.com<br>(via email) | |
| Victory Park Credit Opportunities, LP, et al.<br>Attn: Scott R. Zemnick<br>227 W. Monroe Street, Suite 3900<br>Chicago, IL 60606 | Hohmann,Taube & Summers, L.L.P.<br>c/o Eric J. Taube<br>100 Congress Ave, 18th Floor<br>Austin, TX 78791<br>Fax: (512) 472-5248<br>Email: erict@hts-law.com<br>(via email) | |
| **Office of the United States Trustee** | | |
| United States Trustee<br>903 San Jacinto, Suite 230<br>Austin, TX 78701<br>(via ECF) | | |
| **Consolidated Twenty Largest Unsecured Creditors** | | |
| Pinpoint Drilling &<br>Directional Services LLC<br>PO BOX 204093<br>Houston, TX 77216-4093<br>Phone: 281-466-3600<br>Fax: 281-446-3591<br>(via Fax) | Universal Pressure Pumping Inc<br>4510 Lamesa Highway<br>Snyder, TX 79549<br>Phone: 432-221-7027<br>(via overnight delivery) | PROPETRO SERVICES, INC.<br>1706 SOUTH MIDKIFF ROAD<br>BUILDING B<br>MIDLAND, TX 79701<br>Phone: 432-688-0012<br>Fax: 432-688-3976<br>(via Fax) |

**In re: VPR Operating, LLC, et al.: Master Service List as of April 1, 2013**

| | | |
|---|---|---|
| Stemcor AG<br>8505 Technology Forest Place<br>Suite 401<br>The Woodlands, TX 77381<br>Phone: 281-586-0495<br>Fax: 281-586-0495<br>(via Fax) | Professional Directional Enterprises, Inc.<br>P.O. Box 677457<br>Dallas, TX 75267-7457<br>Phone: 936-441-7266<br>Fax: 936-441-7268<br>(via Fax) | NW OIL SERVICES, LLC<br>900 KASTRIN ST<br>EL PASO, TX 79907<br>Phone: 915-595-2028<br>Fax: 915-594-8034<br>(via Fax) |
| TESCO CORPORATION (US)<br>3993 W. SAM HOUSTON PKWY. N.,<br>SUITE 100<br>HOUSTON, TX 77043<br>Phone: 713-849-5900<br>Fax: 713-359-7001<br>(via Fax) | TanMar Rentals LLC<br>PO BOX 1376<br>Eunice, LA 70535<br>Phone: 337-432-5384<br>Fax: 337-432-6368<br>(via Fax) | Oil States Energy Services<br>1600 W. Highway 6, Ste. 418<br>Alvin, TX 77511<br>Phone: 432-943-2556<br>Fax: 713-470-4888<br>(via Fax) |
| PAR FIVE ENERGY SERVICES, LLCPO BOX 993ARTESIA, NM 88211<br>Phone: 575-748-1288<br>Fax: 575-748-9029<br>(via Fax) | Tiger of the North Transportation, LLC<br>1614 N Gulf Street<br>Hobbs, NM 88240<br>Phone: 575-393-9917<br>Fax: 575-397-0048<br>(via Fax) | The Artesia Lumber Co.<br>P.O. Box 5564<br>Midland, TX 79704<br>Phone: 432-682-7422<br>Fax: 432-682-6233<br>(via Fax) |
| Gandy Corporation<br>P.O. Box 2140<br>Lovington, NM 88260<br>Phone: 575-396-0522<br>Fax: 575-396-0797<br>(via Fax) | Oil Dog Pipe Rentals<br>P.O. Box 4545<br>Midland, TX 79704<br>Phone: 432-620-8711<br>Fax: 432-620-0199<br>(via Fax) | EMS USA, INC<br>2000 BERING DRIVE, SUITE 600<br>HOUSTON, TX 77057<br>Phone: 713-595-7600<br>Fax: 281-998-0303<br>(via Fax) |
| PATTERSON SERVICES, INC.<br>8032 MAIN ST.<br>HOUMA, LA 70360<br>Phone: 985-851-5541<br>Fax: 855-291-0926<br>(via Fax) | Choice Oilfield Service<br>P O Box 337<br>Lovington, NM 88260<br>Phone: 575-396-3428<br>Fax: 575-396-0155<br>(via Fax) | DE LA SIERRA TRUCKING INC.<br>3116 ROSE ROAD<br>HOBBS, NM 88242<br>Phone: 5057380972<br>Fax: 575-738-0973<br>(via Fax) |
| EUNICE WELL SERVICING, INC<br>PO BOX 1500<br>HOBBS, NM 88241<br>Phone: 575-393-9898<br>Fax: 573-393-9889<br>(via Fax) | ABC Rental Tool Co.<br>DBA CAVALOZ ENERGY INC.<br>P.O. Box 1500<br>Hobbs, NM 88241<br>Phone: 505-394-3155<br>Fax: 575-393-9889<br>(via Fax) | |
| **Governmental Agencies** | | |
| Internal Revenue Service<br>Special Procedures Staff – Insolvency<br>P.O. Box 7346<br>Philadelphia, PA 19101<br>(via Overnight Delivery) | United States Attorney<br>601 N.W. Loop 410, Suite 600<br>San Antonio, TX 78216<br>(via Overnight Delivery) | United States Attorney<br>Dept of Justice<br>950 Pennsylvania Ave, N.W.<br>Washington, DC 20530<br>(via Overnight Delivery) |
| **Notices of Appearance & Other Parties Receiving Notice** | | |
| Wells Fargo Bank, N.A.<br>609 Castle Ridge Road, 4th Floor<br>Austin, TX 78746<br>Fax: (512) 314-8486<br>(via Fax) | | |

**In re: VPR Operating, LLC, et al.: Master Service List as of April 1, 2013**

| | | |
|---|---|---|
| Lea County Electric Coop.<br>1300 W Ave D<br>Lovington, NM 88260<br>Fax: 575-396-3634<br>(via Fax) | People's Electric Cooperative<br>PO Box 429<br>Ada, OK 74821-0429<br>Fax: 580-436-0229<br>(via Fax) | Rural Electric Cooperative Inc<br>PO Box 609<br>Lindsay, OK 73052-0609<br>Fax: 4050-756-3104<br>(via Fax) |
| TIME WARNER CABLE<br>PO BOX 60074<br>City of Industry, CA 91716-0074<br>Fax: 866-519-1236<br>(via Fax) | VERIZON WIRELESS<br>PO BOX 660108<br>DALLAS, TX 75266<br>(via Overnight Delivery) | ANSWERING SERVICE CARE<br>BY GLOBAL RESPONSE<br>777 SOUTH STATE ROAD 7<br>MARGATE, FL 33068-2803<br>Fax: 954-968-9870<br>(via Fax) |
| Sunoco, Inc.<br>c/o Kevin Dunleavy, Chief Counsel<br>1735 Market Street<br>Suite LL, 13th Floor<br>Philadelphia, PA 19103<br>Fax: (866) 769-9424<br>Email: krdunleavy@sunocoinc.com<br>(via e-mail) | | |